# Hawkins *v.* Pittsburg, Appellant.

*Municipalities—Highway—Road law—Widening street—Relocation of street—Act of March* 19, 1903, *P. L.* 35.

An ordinance of the city of Pittsburg purporting to relocate an established alley, but having in fact the effect of widening the alley, is invalid. The city has no power to relocate a street, and if it intends to widen a street it must pursue the course prescribed by the Act of March 19, 1903, P. L. 35.

Argued Nov. 13, 1907.    Appeal, No. 206, Oct. T., 1907, by defendant, from decree of C. P. No. 3, Allegheny Co., May T., 1907, No. 583, on bill in equity in case of William G. Hawkins, Jr., *v.* City of Pittsburg.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Bill in equity to declare a city ordinance invalid.

EVANS, J., filed the following opinion :

This cause came on to be heard on exceptions to the conclusions of law of the trial judge, which exceptions are, first, that the court erred in finding that the ordinance of the city of Pittsburg of July 1, 1903, is void, and, second, that the defendant is entitled to the relief prayed for.

Virgin Alley was a public thoroughfare of the city of Pittsburg for very many years, extending from Grant street to Liberty avenue, and crossing on its way Smithfield and Wood streets.    It was twenty feet wide, and lay midway between

Fifth and Sixth avenues in the city. It was widened some years ago, from Liberty avenue to Smithfield street, to the width of forty-four feet, and on July 1, 1903, the councils of the city of Pittsburg passed an ordinance purporting to be an ordinance relocating Virgin alley, from Smithfield to Grant streets, by changing the northerly line so that the northerly line of said street should be removed twenty-four feet north and extend parallel with the present northerly line of said street.

It is contended by the plaintiff that the city of Pittsburg has no power to relocate a street, or to locate a street that is already opened and improved and used as a public highway by the inhabitants of the city.

The Act of assembly of April 28, 1899, sec. 1, P. L. 100, provides that, "Every municipal corporation shall have the power to lay out, establish or re-establish grades, streets and alleys, or parts thereof, and to construct bridges, piers and abutments therefor, and sewers and drains in any street or alley, and through or on or over private property."

A municipal corporation is the creature of the legislature. Its powers are the powers that are expressly given to it by the legislature, and it possesses no powers except such as are so given or necessarily inferred because they are indispensable to the declared objects and purposes of the municipality.

There is no power expressly given to the city of Pittsburg to relocate a street, and it is reasonably conclusive that if the legislature had considered that the power to relocate a street was necessary to the cities of this commonwealth, that power would have been expressly granted, because in the same section of the act the power to establish and re-establish the grades of streets is given. If the power to relocate a street were given, then it must necessarily follow that the act of relocation would annul and do away with the former location, as the re-establishment of the grade of a street repeals the former, and must of necessity repeal the former grade established. But this ordinance does not contemplate the doing away of the former location of Virgin alley. Virgin alley is established to-day as it has been for generations, an open, improved and traveled highway, unaffected, so far as the public is concerned, by the ordinance of July 1, 1903.

The term "to lay out a street" is essentially a preliminary step to the establishing of a new highway: Foster v. City of Boston Park Commissioners, 133 Mass. 321. The natural and ordinary meaning of the phrase is to fix the boundaries and to establish the location of something that has not been fixed or established before. But, as we have said, Virgin alley was an established street, graded, paved, curbed and used by the public for many, many years prior to the passage of this ordinance. In any aspect which we will view the term "to lay out" or "to locate" the purpose to be gained by the city in the passage of this ordinance is not to locate a new street or to relocate a street, but to widen an existing street. The purpose is to widen Virgin alley, now Oliver avenue, to the width of forty-four feet. The city has this power given to it by the legislature, and there are only two ways by which a municipality may change the lines of an existing street, and that is by widening or straightening. This the city can do by passing a proper ordinance to widen Oliver avenue, but the passage of such an ordinance would be the taking of the plaintiff's property, and the city would be compelled immediately to compensate the plaintiff in damages.

And this brings us to a contemplation of the whole purpose and evil of this ordinance. The city is evidently not prepared at the present time to widen Oliver avenue, and it attempts by the passage of this ordinance to prevent any additional improvements being made upon the property, which lies between the proposed northerly line and the present northerly line of Oliver avenue pending the passage of an ordinance for such widening. As we have stated above, this street extends across some of the most prominent business thoroughfares of the city. The property taken from the plaintiff at the corner of Smithfield street and Oliver avenue is very valuable business property. If this ordinance be allowed to stand it ties up the property of the plaintiff for an indefinite period, prevents any improvements being made upon his property, interferes with the leasing of his property for any extended term, and is a serious cloud upon his title.

It may be argued that all this would be true if the city were to locate a new street through a similar section of the

city, but the location of a new street is a necessary preliminary step to its opening. Whether it be by provision in the same ordinance by which the street is opened, or by a separate ordinance first adopted, the lines of the street must be fixed, its location adopted by the city; in other words, the street must be laid out before it can be opened, because there is nothing on the ground by which the street boundaries may be fixed in the opening except by the ordinance of location. Such power is not essential to the widening of a street, and such power was not given to municipalities by the legislature. Therefore, it is a matter for consideration by the courts of the purpose of the legislation and the injury which it will entail to the plaintiff.

Let the exceptions be dismissed.

*Error assigned* was the decree in favor of the plaintiff.

*John D. Evans,* with him *W. B. Rodgers* and *A. M. Thompson,* for appellant.—The city of Pittsburg has power to lay out or locate streets: District of the City of Pittsburg, 2 W. & S. 320; Forbes Street, 70 Pa. 125; Bush v. City of McKeesport, 166 Pa. 57; Com. v. George, 148 Pa. 463; City of Philadelphia v. Tryon, 35 Pa. 401; City of Williamsport v. Commonwealth, 84 Pa. 487; White v. Borough of McKeesport, 101 Pa. 394.

The councilmanic body is the sole judge as to the necessity and expediency of the exercise of the power granted to a municipality, and its decision is not reviewable by the courts: Waln's Heirs v. Philadelphia, 99 Pa. 330; Oil City v. Oil City Boiler Works, 152 Pa. 348; Michener v. Philadelphia, 118 Pa. 535; Macy v. City of Indianapolis, 17 Ind. 267.

Locating or relocating is damnum absque injuria: District of the City of Pittsburg, 2 W. & S. 320; Negley Avenue, 146 Pa. 456; McKeesport v. Bush, 166 Pa. 57; Volkmar Street, Philadelphia, 124 Pa. 320; Forbes Street, 70 Pa. 125; Act of May 16, 1891, section 12, P. L. 75.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* with him *Dalzell, Fisher & Hawkins,* for appellee.—Appellant has no power to relocate: Pennsylvania R. R. Co.'s Case, 213 Pa.

373; Foster v. Park Commissioners, 133 Mass. 321; McKay
v. Water Co., 44 Pittsburg Leg. Journ. 406; In re Pough-
keepsie Bridge Co., 108 N. Y. 483; Beck v. R. R. & Canal
Co., 39 N. J. Law, 45; Philadelphia & Trenton R. R. Co., 6
Wharton, 25; Paul v. Carver, 24 Pa. 207; It re Callohill
Street, 32 Pa. 361.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1908:

The learned trial judge in the opinion filed by him, has fully
vindicated the decree which he entered, and upon that opin-
ion the decree is affirmed.

There is another sufficient reason for sustaining the decree.
The manifest purpose the city had in view in passing the or-
dinance was, as clearly disclosed in the ordinance itself, to ul-
timately widen Virgin alley. It, therefore, should have
enacted an ordinance for that purpose and should not have
attempted to evade liability to injured property owners by
passing an ordinance ostensibly for another purpose but in re-
ality to widen the alley.

The ordinance in question enacts: " That the northern build-
ing line of Virgin alley, from Smithfield street to Grant street,
be and the same is hereby relocated; " and locates the line " at
a distance of 24 feet northwardly from the present north
building line of Virgin alley." The intention of the ordinance
is then declared in the following language: " The intention of
this ordinance is to relocate Virgin alley, from Smithfield
street to Grant street, to a width of forty-four feet by taking
a strip of ground twenty-four feet in width from the properties
on the northerly side of Virgin alley."

Virgin alley is an old street, extending from Liberty avenue
to Grant street and crossing Wood and Smithfield streets. By
an ordinance, passed about six months prior to the ordinance
in question, the city authorized the widening and opening of
Virgin alley from Liberty avenue to Smithfield street, and the
assessment of damages caused by the grade of the street. In-
stead of extending this ordinance to that part of the alley be-
tween Smithfield and Grant streets, and thereby authorizing
the widening of the alley, as was done in the part of it be-
tween Liberty avenue and Smithfield street, the city passed
the ordinance in question which is entitled " An ordinance re-

locating the northern building line of Virgin alley, from Smith-field street to Grant street." As said by the learned trial judge in his opinion, " if this ordinance be allowed to stand it ties up the property of the plaintiff for an indefinite period, prevents any improvements being made upon his property, in-terferes with the leasing of his property for any extended term, and is a serious cloud upon his title."

Notwithstanding the title of the ordinance, it is simply an ordinance for the widening of Virgin alley between Smith-field and Grant streets. The " relocating the northern build-ing line of Virgin alley " is widening Virgin alley for the dis-tance between the present and the proposed northern line. This difference is declared in the ordinance to be twenty-four feet, and the width of the alley is simply enlarged to that ex-tent ; or the alley is widened, in the language of the ordi-nance itself, " by taking a strip of ground twenty-four feet in width from the properties on the northern side of Virgin alley." The alley remains as it has existed for many years, and it is not proposed in the ordinance to change its location or to vacate it. Its southern line is to remain as it ever has been, and the purpose of the ordinance is simply, as its title declares, to locate the northern line of the alley by a line par-allel with and twenty-four feet distant from the present north-ern line of the alley. These are the facts of the case as de-clared by the ordinance itself. It is in effect, therefore, and may be said to be an ordinance to widen Virgin alley between Smithfield and Grant streets.

If the city desires to add this additional width to Virgin alley or to change and straighten the northern line of the alley, the act of assembly prescribes the manner in which it must be done. This power is conferred upon the city by the Act of March 19, 1903, P. L. 35, 3 Purd. (13th ed.) 2744, which authorizes the city, in the manner therein pointed out, " to open, widen, straighten or extend streets or alleys, or parts thereof, within its limits, and to vacate streets or alleys, or parts thereof." This is specific authority, conferred by an act of assembly, authorizing the city to do the act which the ordinance in question declares it intends to do, namely, to widen Virgin alley between Smithfield and Grant streets. The legislature having thus provided a method for adding an

additional width to an existing alley, or for widening the alley, the method must be strictly pursued, as commanded by the act of March 21, 1806, 4 Sm. L. 326, sec. 13, 1 Purd. (13th ed.) 271, which enacts that "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, further than shall be necessary for carrying such act or acts into effect:" White v. Borough of McKeesport, 101 Pa. 394.

It is clear from an examination of the legislation on the subject, that the legislature has made ample provision to enable the city to carry out the purpose it had in the enactment of this ordinance. The city, therefore, is not driven to invoke the aid of any implied powers, nor, as we have seen, can it invoke them so long as there is express statutory power authorizing it to accomplish its purpose. There is an abundance of legislation conferring ample power upon the city to locate, lay out and open streets; to widen, straighten, extend and vacate streets; and to grade, pave, curb, macadamize and otherwise improve streets. So long as this authority exists, so long must it be strictly pursued. Nor can the municipality evade a compliance with the method pointed out for exercising the authority. Whenever the municipality desires authority to act, it must proceed in the manner which the facts of the case require. Its council cannot escape the provisions of the statute or ignore the course of procedure directed by the statute by simply declaring in the ordinance a purpose other than the facts disclose. The facts must determine what method the city shall pursue to accomplish its purpose, and those facts requiring it to proceed in the manner provided in certain legislation, the provisions of the legislation will determine the course of procedure.

The assignments of error are overruled, and the decree of the court below is affirmed.